## Case No. 4,533a.

ESSLER et al. v. WORTH et al.

[22 Betts, D. C. MS. 47.]

District Court, S. D. New York.[1]

[1] [No date is given in the original manuscript. 22 Betts, D. C. MS., includes cases from September, 1853, to January, 1857.]

BETTS, District Judge. The libellants instituted an action in personam against Henry C. Worth, Gideon Fountain, William Andrew and Hiram Watson to recover $3314.16, the amount of charges for materials, labor and supplies furnished the steamboat Naushon in this port. The libel lacks precision and certainty in alleging the facts upon which the action is founded, but, no exception being taken to the pleading in that respect, the court will dispose of the case presented for consideration upon an assumption of facts fully as broad as the libel will warrant, or as are claimed on the argument on behalf of the libellants.

The libel prayed a warrant of arrest in due form of law according to the course of the court in causes of admiralty and maritime jurisdiction against all the defendants, and that if they cannot be found that their goods and chattels within this district may be attached to a sufficient amount to answer the libellants, and that payment may be decreed the libellants for the amount of their debt with interest and costs. Upon filing the libel the libellants obtained from the clerk, without mandate of the judge, the ordinary mesne process for the arrest of the persons of the respondents, commanding the marshal to arrest them and have their bodies before the court on a day named, to answer the libel; with a clause thereto annexed that "if the said respondents, or any of them, cannot be found in your district, you are hereby commanded that you attach the boat Naushon her tackle, etc., as the property of the said respondents, to compel their appearance." The marshal returned the process, with the return endorsed thereon: "Defendants not found. I have attached the steamboat Naushon as the goods and chattels of the within named debts." On filing this return an order was obtained of the proctors for all the respondents except Worth that their appearance for said respondents be entered, and for a further day to answer. A motion is now made to vacate the attachment and deliver up possession of the steamboat to the respondents. The leading reasons assigned

for the discharge of the attachment are: 1. That the process is irregular, as being unauthorized by the practice of the court. 2. That Worth, one of the defendants, has no title to or interest in the vessel attached, and that she cannot be held in custody to compel his appearance. 3. That the defendants having appeared regularly and filed the stipulation required and put in their answer to the libel, the purpose of the attachment has been accomplished and its force expended.

The stress of the case is placed by counsel on both sides upon the last objection, and the judgment of the court is sought upon that to settle what is supposed to be an undetermined point of practice, whether an arrest of property under a warrant of foreign attachment effects a sequestration of the property seized to answer the final decree of the court; or whether its effect is limited to coercing the appearance of the debtor owner, and placing him within the control of the court the same as if brought before it by arrest of his body. Without then discussing the question of irregularity of process, or that of the ownership of the defendant Worth, I will dispose of the case upon the point of the right of the libellants to hold the steamboat under seizure to answer the debt they may on hearing establish against her owners. It seems to be not important now to attempt to ascertain precisely the form or operation of a similar process employed in the civil law against the effects of absent debtors, because from the time it was adopted in admiralty courts, to its recognition by the American tribunals, it seems to have been understood to perform but the single office of constraining the party proceeded against to appear and submit himself to the jurisdiction of the court in the cause for which it was issued. The like functions were attributed by the courts of common law to the writ of distringas or distress infinite, under which, progressing gradually from a nominal amount to embracing all the goods of an absent debtor, the courts compelled the party sued to appear, but the property seized was still not appropriated to the benefit of the creditor. Com. Dig. "Process," D 7. The writ of foreign attachment allowed against the goods of a foreign merchant found owing money in England charged with having robbed English merchants abroad, who failed obtaining redress there, was not improbably the foundation of the writ of foreign attachment established by the customs of London, and by which the property seized was detained under arrest to satisfy the judgment rendered against the debtor. Such is also the effect of an attachment of property authorized by the laws of several of the states of the Union, as a process by which the action is imitated. But the supreme court has settled the point in our practice that the admiralty writ of attachment is not borrowed from or in imitation of the foreign attachment under the custom of London. [Manro v. Almeida] 10 Wheat. [23 U.

S.] 490. The supreme court rules of admiralty practice have legislated into authoritative use this long known process (rule 2), and the rule has also pointed out the terms of the writ, but has not defined its operation. Rule 2 declares: "In suits in personam the mesne process may be by a single process or arrest of the person of the defendant in the nature of a capias, or by a warrant for the arrest of the person of the defendant with a clause therein, that if he cannot be found to attach his goods or chattels to the amount sued for." In the English practice the attachment process followed that for the arrest of the defendant, and was issued upon the return of the first, that the defendant has absconded or was concealed so that he could not be arrested (Clarke, Praxis Adm. tit. 28), and this is so in the Massachusetts district (Dunl. Adm. Pr. 137, 139).

This court decided in 1840 that a foreign attachment is not to be regarded a proceeding in rem, arresting the property as initiatory to the commencement of a debt, but as a collateral proceeding, and for an object different from that of subjecting the property to the demand. Cole v. The Brandt [Case No. 2,-978]; Betts' Adm. Pr. 28, 30, 33. This it appears to me is the light in which the process has been viewed in the admiralty courts of this country and in the English practice. Bouysson v. Miller [Case No. 1,709]; Dunl. Adm. Pr., Conk. Pr. 478; 2 Browne, Civ. & Adm. Law, 435. It is, however, not necessary to trace back the origin or ancient application of the writ, or consider the manner in which other courts of admiralty have employed it. The decision of the supreme court of the United States in Manro v. Almeida, 10 Wheat. [23 U. S.] 476, settles with entire precision that its object and effect is to compel the appearance of the defendant. Id. 489, 493, 494. And rule 26 of this court provided that the attachment may be dissolved on the party giving a stipulation with sureties to the same effect as in cases of arrest. If the defendant fails to appear, then undoubtedly the arrest of the property will remain under the attachment to the final decision of the case, when it may be made to satisfy the decree. Clarke v. New Jersey Steam Nav. Co. [Case No. 2,859]. But then I apprehend it will not be condemned to that end by the court, but it must be proceeded against by suit of execution,—when the right of ownership of the defendant may be inquired into and determined. Three of the defendants having entered their appearance in the cause, the attachment is practus officio as to them, and their motion to discharge the property, so far as their interest is concerned, must prevail. Rule 26. The plaintiff has, however, a right to retain it as to Worth until his right of property in the steamboat is determined, unless he duly enter his appearance also to the action. The real owner is entitled to intervene and contest the possession or interest of Worth in the vessel. Order accordingly.